No. 22-1943

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

WILLIAM T. LYONS, Individually and on Behalf of Others Similarly Situated

*Plaintiff-Appellant*

v.

PNC BANK, N.A.,

*Defendant-Appellee*

On Appeal from the United States District Court
For the District of Maryland, No. 1:20-cv-02234-SAG
Before the Honorable Stephanie A. Gallagher

## APPELLANT'S OPENING BRIEF

Scott C. Borison
BORISON FIRM, LLC
1400 S. Charles Street
Baltimore, MD  21230
Tel.: (301) 620-1016
scott@borisonfirm.com

Phillip R. Robinson
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
Tel.: (301) 448-1304
phillip@marylandconsumer.com

*Counsel for Appellant*

November 23, 2022

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1943         Caption: Lyons v. PNC Bank, N.A.

Pursuant to FRAP 26.1 and Local Rule 26.1,

William T. Lyons
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?   ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Scott C. Borison        Date: _____9/9/22_____

Counsel for: Appellant, William T. Lyons

- 2 -

[Print to PDF for Filing]    [Reset Form]

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

JURISDICTIONAL STATMENT ...................................................... 1

STATEMENT OF ISSUES ................................................................ 2

STATEMENT OF THE CASE ...........................................................3

    I.    PROCEDURAL HISTORY OF THE CASE BELOW ................................. 8

    II.    THE LYONS FACTS ...................................................... 8

SUMMARY OF ARGUMENT ....................................................... 14

ARGUMENT ................................................................................ 17

    I.    STANDARD OF REVIEW ................................................... 17

    II.    LYONS SUFFICIENTLY PLED THAT PNC'S OFF-SETS OF HIS ACCOUNTS FOR ALLEGED PAYMENTS DUE ON HIS HELOC MORTGAGE LOAN WERE BARRED BY TILA ............................................................. 18

        A. TILA's Debt Collection Provisions Subject to this Action ................... 18

        B. HELOCs Qualify as Credit Cards under TILA and are Not Exempt from TILA's Bar on PNC Seizing Funds of a Consumer Held in an Account ............................................................ 21

    III.    PLAINTIFF-APPELLANT SUFFICIENTLY PLED HIS CLAIMS UNDER RESPA; A HELOC QUALIFIES AS A FEDERALLY RELATED MORTGAGE LOAN ......... 28

    IV.    THE CFPB WAS NOT GRANTED AUTHORITY BY CONGRESS TO ISSUE WHOLESALE UNREASONABLE EXEMPTIONS FROM RESPA'S SCOPE RELATED TO HELOC LOANS OTHERWISE ENTITLED TO PROTECTIONS AND RIGHTS AT ISSUE IN THIS CASE ...................................................... 34

    V.    PNC AND THE DISTRICT COURT WERE BARRED FROM ADVANCING AND CONSIDERING ISSUES UPON REMAND WHICH WERE RAISED OR COULD HAVE BEEN RAISED IN LYONS I ................................................... 38

CONCLUSION ............................................................................. 44

CERTIFICATE OF COMPLIANCE ............................................ 46

CERTIFICATE OF SERVICE ..................................................... 47

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Alexander v. Carrington Mortg. Servs., LLC,*
   23 F.4th 370 (4th Cir. 2022) ..................................................................23, 24, 30

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945)...........................................................................................27

*A.T. Massey Coal Co. v. Holland*,
   472 F.3d 148 (4th Cir. 2006) ....................................................................... 35-36

*Andrus v. Glover Const. Co.*,
   446 U.S. 608 (1980)...........................................................................................26

*Bender v. Elmore & Throop, P.C.*,
   963 F.3d 403 (4th Cir. 2020) .............................................................................17

*Beuster v. Equifax Info. Servs.*,
   435 F. Supp. 2d 471 (D. Md. 2006)...................................................................37

*Cortez v. Keystone Bank, Inc.*,
   No. 98-2457, 2000 WL 536666 (E.D. Pa. May 2, 2000) ..................................31

*Consolidation Coal Co. v. Williams*,
   453 F.3d 609 (4th Cir. 2006) .............................................................................27

*Degidio v. Crazy Horse Saloon & Rest. Inc.*,
   880 F.3d 135 (4th Cir. 2018) .............................................................................43

*Diedrich v. Ocwen Loan Servicing, LLC*,
   839 F.3d 583 (7th Cir. 2016) .............................................................................33

*Digital Realty Tr., Inc. v. Somers*,
   138 S. Ct. 767 (2018)........................................................................................25

*Fuentes v. Shevin*,
   407 U.S. 67, 92 S. Ct. 1983 (1972).................................................................5, 18

*Gardner v. Montgomery Cty. Teachers Fed. Credit Union*,
   864 F. Supp. 2d 410 (D. Md. 2012)............................................................ 19-21

ii

*Hawkins-El v. First Am. Funding, LLC*,
    891 F. Supp. 2d 402 (E.D.N.Y. 2012) .................................................................31

*Heilweil v. Mount Sinai Hosp.*,
    32 F.3d 718 (2d Cir. 1994) .................................................................................19

*Herrmann v. Wells Fargo Bank, N.A.*,
    529 F. Supp. 3d 549 (W.D. Va. 2021) ......................................................... 32-33

*Hillman v. Maretta*,
    569 U.S. 483 (2013).....................................................................................26, 33

*JTH Tax, Inc. v. Aime*,
    984 F.3d 284 (4th Cir. 2021) ....................................................................... 41-43

*Lyons v. PNC Bank, Nat'l Ass'n*,
    26 F.4th 180 (4th Cir. 2022) ......................................................................*passim*

*Martino v. Am. Airlines Fed. Credit Union*,
    121 F. Supp. 3d 277 (D. Mass. 2015).................................................................26

*McAnaney v. Astoria Fin. Corp.*,
    2008 WL 222524 (E.D.N.Y. Jan. 25, 2008)................................................14, 23

*Medrano v. Flagstar Bank, FSB*,
    704 F.3d 661 (9th Cir. 2012) .............................................................................33

*Meekins v. United Transp. Union*,
    946 F.2d 1054 (4th Cir. 1991) ...........................................................................17

*Mitchell v. W. T. Grant Co.*,
    416 U.S. 600 (1974)...........................................................................................18

*Morgan v. Caliber Home Loans, Inc.*,
    26 F.4th 643 (4th Cir. 2022) ..............................................................................36

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022).......................................................................................44

*Munoz v. Seventh Ave., Inc.*,
    No. 04 C 2219, 2004 WL 1593906 (N.D. Ill. July 15, 2004)....................... 23-24

iii

*Noah v. AOL Time Warner, Inc.*,
 261 F. Supp. 2d 532 (E.D. Va. 2003) ...........................................................26, 33

*Patel v. Thompson*,
 319 F.3d 1317 (11th Cir. 2003) ..........................................................................19

*Polonowski v. PNC Bank, N.A.*,
 No. 1:20-CV-151, 2021 WL 4476996 (W.D. Mich. Sept. 30, 2021)........... 31-32

*Ramirez v. Dep't of Corr., Colo.*,
 222 F.3d 1238 (10th Cir. 2000) ..........................................................................17

*Ray v. Roane*,
 948 F.3d 222 (4th Cir. 2020) ..............................................................................17

*Renfroe v. Nationstar Mortg., LLC*,
 822 F.3d 1241 (11th Cir. 2016) .......................................................................... 33

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
 903 F.3d 415 (4th Cir. 2018) ........................................................................26, 33

*Roth v. CitiMortgage Inc.*,
 756 F.3d 178 (2d Cir. 2014) ............................................................................... 33

*Russell v. Cont'l Rest., Inc.*,
 430 F. Supp. 2d 521 (D. Md. 2006)................................................................26, 33

*Shames-Yeakel v. Citizens Fin. Bank*,
 677 F. Supp. 2d 994 (N.D. Ill. 2009)..................................................................24

*United States v. Aramony*,
 166 F.3d 655 (4th Cir. 1999) ........................................................................ 40-43

*United States v. Bice-Bey*,
 701 F.2d 1086 (4th Cir. 1983) ......................................................................14, 23

*United States v. Boadu*,
 637 F. App'x 740 (4th Cir. 2016)................................................................... 40-43

*Wirtz v. Specialized Loan Servicing, LLC*,
 886 F.3d 713 (8th Cir. 2018) ..............................................................................33

iv

**Statutes**

12 U.S.C. § 2601, *et seq.*.................................................................*passim*

12 U.S.C. § 2602. ................................................................. 15, 29-30, 33

12 U.S.C. § 2605 ....................................................................*passim*

12 U.S.C. § 2617 ....................................................6, 34, 35, 37, 38

15 U.S.C. § 1601, *et seq.* ............................................................*passim*

15 U.S.C. § 1602 ................................................................. 2, 14, 21-24

15 U.S.C. § 1666h...........................................................................*passim*

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1332 ...................................................................................1

Dodd-Frank Wall Street Reform and Consumer Protection Act,
124 Stat 1376 .......................................................................... 6, 34-35

**Rules**

Fed. R. Civ. P. 1 ..............................................................................41

Fed. R. Civ. P. 12(c).................................................................17, 43

**Other Authorities**

2A Sutherland Statutory Construction § 47:7 (7th ed.) ...........................................25

3 Sutherland Statutory Construction § 60:1 (7th ed.) ............................................19

12 C.F.R. § 1024.35 ...............................................................6, 7, 15

12 C.F.R. § 1024.36 ...............................................................6, 7, 15

12 C.F.R. 1026.12(d)(1)...............................................................4, 5, 18, 28

12 C.F.R. § 1026.13 ...................................................................38

v

Mortgage Servicing Rules Under the Real Estate Settlement
    Procedures Act (Regulation X), 78 FR 10696-01 .......................................37, 38

# JURISDICTIONAL STATEMENT

Defendant/Appellee PNC Bank, NA ("PNC") removed this action to the district court asserting it had original jurisdiction of the federal questions presented pursuant to 28 U.S.C. § 1331. JA251. The district court's federal question jurisdiction was based on violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") as alleged by the Plaintiff/Appellant, William Lyons ("Appellant" or "Lyons"). PNC also claimed the district court had had diversity jurisdiction pursuant to 28 U.S.C. § 1332 claiming Lyons' individual claims exceeded $75,000.00 in controversy. JA251.

After initially filing a verified Answer to Lyons' complaint, PNC moved to compel arbitration of Lyons' TILA claims against it. JA212-225. The District Court granted the motion in part and denied it in part. PNC filed an appeal and Lyons cross appealed the District Court's rulings. This Court held PNC had no legal right to force Lyons' TILA claims to arbitration in a reported decision. *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180 (4th Cir. 2022)("*Lyons I*").

After remand, PNC moved for a judgment on the pleadings which the District Court granted and dismissed all of Lyons' claims in their entirety. This Court has jurisdiction over the District Court's judgment under 28 U.S.C. § 1291.

The District Court entered its order on August 2, 2022. JA208. Lyons timely

filed a notice of appeal on September 1, 2022. JA210-211.

## STATEMENT OF ISSUES

1. Does a home equity line of credit (HELOC) that includes a credit device qualify as a "credit card" as that term is defined under 15 U.S.C.A. § 1602?

2. May a creditor lawfully offset sums non-judicially that it alleges to be due on a debtor's credit card account from a deposit account held by the lending bank?

3. Does a HELOC loan qualify as a "federally related mortgage loan" subject to the rights granted by Congress to homeowners under 12 U.S.C.A. § 2605(e) and the related regulations promulgated by the Consumer Financial Protection Bureau ("CFPB")?

4. Does the CFPB have the authority to create regulatory exceptions that eliminate the protections for homeowners who take out HELOC loans that were established by Congress in 15 U.S.C.A. § 1666h(a) and 12 U.S.C.A. § 2605(e)?

5. Did the District Court err by considering issues which PNC could have raised in *Lyons I* but waived its right to do so?

## STATEMENT OF THE CASE

This is the second time this case comes before the Court.  In *Lyons I*, after (i)

providing a verified Answer to Lyons' complaint along with exhibits (JA025-084),

PNC moved to compel arbitration of Lyons' TILA claims. PNC did not contend that

the motion to compel arbitration applied to Lyons' RESPA claims.  In reversing the

District Court, this Court held that the arbitration provision was not enforceable and

explained:

> William Lyons, Jr. filed suit against PNC Bank, N.A., alleging
> violations of the Truth in Lending Act ("TILA") related to PNC's set-
> off of funds from two of Mr. Lyons's deposit accounts to pay the
> outstanding balance on a Home Equity Line of Credit ("HELOC").
> PNC moved to compel arbitration of the dispute based on an arbitration
> provision in the parties' agreement applicable to the two deposit
> accounts, and the district court granted the motion as to one account
> and denied the motion as to the other account.
>
> We find that a provision of the Dodd-Frank Wall Street Reform and
> Consumer Protection Act ("Dodd-Frank Act") that amends TILA
> prohibits consumer agreements related to residential mortgage loans
> from requiring the arbitration of claims.

*Lyons I,* 26 F.4th at 183.

While PNC sought to force Lyons' TILA claims to arbitration, it waived any

effort to compel his RESPA claims to arbitration. PNC never sought to dismiss the

RESPA claims even after it was granted an extension of time to do so.  PNC could

have sought to dismiss Lyons' RESPA claims before filing its verified Answer

(JA025-084). PNC voluntarily waived the right to do so and instead elected to advance its failed arbitration arguments related to the TILA claims.[1]

The crux of Lyons' claims concern: (i) whether PNC's unlawful debt collection practices violated TILA when it offset account holders' funds to collect sums it claims were allegedly due for credit accessed by a credit card — in this case a HELOC mortgage loan; and (ii) PNC's legal duty under RESPA to conduct an investigation based on Lyons' qualified written request or request for information related to his federally related mortgage loan. The District Court held that the remedial statutes should be interpreted to find a HELOC mortgage loan was not covered by TILA, 15 U.S.C.A. § 1666h(a) and Regulation Z, 12 C.F.R. 1026.12(d)(1) and the remedial protections and rights afforded by RESPA, 12 U.S.C.A. § 2605. The District Court carved out judicial exceptions to these remedial statutes that Congress did not provide.

The District Court's ruling that dismissed Lyons' claims was inconsistent with this Court's precedents and the statutory definitions of "credit card" and "federally related mortgage loan," under TILA and RESPA. This Court and other courts have routinely applied TILA and RESPA's requirements to HELOC mortgage loans and there is no basis to create exceptions to the plain language of the statutes involved.

---

[1]      It should be noted that PNC understood it had the right to address the merits of Lyons' claims and voluntarily addressed the merits of Lyons' arguments to some degree before this Court in *Lyons I*.

Even if Congress' policy decisions could be changed by the District Court, it could not override the plain language enacted by Congress or substitute a flawed policy. The TILA prohibition does nothing more than reinforce basic due process that a creditor is not entitled to non-judicial seizures of a debtor's property. *See, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 81–82, 92 S. Ct. 1983, 1994–95 (1972) ("If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented…. no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred"). TILA merely extends this requirement to a creditor in a consumer transaction to confirm the same rules apply even when a creditor may have easy access to a debtor's funds when it is the lender and also holds a debtor's deposit accounts. The District Court found that this basic provision of TILA and Regulation Z does not apply to a HELOC mortgage loan and the remedial protections established by 15 U.S.C.A. § 1666h(a) and 12 CFR 1026.12(d)(1), leaving the property of Lyons and other HELOC borrowers subject to non-judicial seizure of their deposit funds.

Similarly, the District Court also held that the Consumer Financial Protection Bureau ("CFPB") was permitted by regulation to entirely eliminate Lyons' rights and protections expressly authorized under 12 U.S.C.A. § 2605 by regulation when the CFPB's authority was only granted to promulgate regulations "to carry out this

section," and it only had authority to establish "reasonable exemptions…to achieve the purposes of [RESPA]"[2] within its regulation authority (and not to the statutory text itself). No other provisions of RESPA or Regulation X allow a borrower, like Lyons, to dispute the allocation of his payments or other standard servicer duties other than 12 U.S.C.A. § 2605 and 12 C.F.R. §§ 1024.35, 1024.36. The result of the district court's RESPA ruling is that neither Lyons nor any other HELOC borrower may dispute the collection conduct of a mortgage servicer of an otherwise qualified federally related mortgage. This contravenes Congress' purpose in enacting and amending RESPA from time to time. For example, Congress recognized in the Dodd-Frank Act itself (which amended RESPA) in its preamble to the final legislation:

> An Act To promote the financial stability of the United States by improving accountability and transparency in the financial system, to end "too big to fail", to protect the American taxpayer by ending bailouts, **to protect consumers from abusive financial services practices**, and for other purposes.

Dodd-Frank, 124 Stat 1376 (emphasis added).

Simply put, the district court's conclusion that the CFPB was permitted to exempt wholesale RESPA's protections in 12 U.S.C.A. § 2605 and 12 C.F.R. §§ 1024.35, 1024.36 for HELOC borrowers was erroneous. The CFPB's exemption authority was limited to "reasonable" exemptions only and was not authorized to

---

[2]    12 U.S.C.A. § 2617(a).

establish wholesale denial of statutory rights for borrowers like Lyons to dispute PNC's abusive collection and accounting practices.    The CFPB was never authorized to take away the wholesale rights of borrowers who like Lyons object to a mortgage servicer's unfair and deceptive collection practices concerning the allocation of their payments.  To the contrary, the CFPB's regulatory authority was limited to regulations needed to carryout rights and protections like those in § 2605(e).

Finally, PNC avoided discovery by moving the district court to dismiss all of Lyons' remedial claims, even though it had the opportunity raise the issues concerning Lyons' claims when it previously appealed to this Court. PNC chose not to do so and has waived these arguments that it could have advanced during and before *Lyons I*.

Plaintiff-Appellant now asks this Court to correct the district court's errors and affirm that PNC's non-judicial seizure of Lyons' deposit funds for payments on a HELOC loan violate TILA. Lyons also asks for this Court to correct the district court's errors and restore the application of RESPA's remedial protections under 12 U.S.C.A. § 2605 and 12 C.F.R. §§ 1024.35, 1024.36 to Lyons' mortgage loan and find that borrowers of a federally related mortgage loan, including a HELOC mortgage loan, are entitled to the rights and protections enacted at under 12 U.S.C.A. § 2605(e) and 12 C.F.R. §§ 1024.35, 1024.36.

## I.     Procedural History of the Case Below

Lyons originally filed his Complaint in the Circuit Court for Anne Arundel County, Maryland on June 25, 2020. Defendant PNC removed the action to the district court. JA250. PNC elected not to file a Rule 12(b)(6) motion and instead filed its verified Answer (with exhibits).  JA025-084.  While addressing certain merits of Lyons' claims, PNC moved the district court to partially compel his TILA claims to arbitration and to stay Lyons' RESPA claims. JA212-225.  The district court granted in part and denied in part certain of PNC's arguments.  The parties thereafter sought review of the district court's rulings and this Court thereafter issued its published decision in *Lyons I*.

Upon remand after the decision in *Lyons I* was issued, the district court issued a scheduling order and Lyons served discovery.  JA109, JA106-108.  PNC also moved pursuant to Rule 12(c) for a judgment on the pleadings.  JA110-139.  Lyons opposed the motion. JA140-176.  The District Court decided the motion without hearing and issued a written order and opinion dismissing Lyons' individual claims with prejudice on August 2, 2022. JA199-209.    Lyons timely noted his appeal to this Court September 1, 2022.  JA210-211.

## II.     The Lyons Facts

"A [HELOC mortgage loan], like those taken out and utilized by the Plaintiff and Class members from time to time, has been recognized as an open-end credit

plan…. As such, an open-end HELOC loan is a credit card." JA008-009. (Compl.

at ¶ 4 (citing sources)). "Upon information and belief, the Defendant's practices are

institutionalized by the use of a software program or code used by the Defendant.

PNC tracks the credit card accounts of Plaintiff and other class members along with

the deposit accounts of the Plaintiff and others to enable the Defendant to make

unilateral, unauthorized withdrawals from the deposit accounts held by the Plaintiff

and class members." JA009 (Compl. at ¶ 5).

> Lyon's HELOC loan account was opened with National City Bank ("National City") on or about February 4, 2005. The material terms of Lyons HELOC loan with National City subject to this action were as follows:
>
>> a. The Parties agreed that the loan was "an open-end lined of credit" which Lyons could "use to obtain cash advances (Advances) from time to time."
>>
>> b. National City issued a "credit card" for use of the HELOC loan account. Lyons was permitted to use and did use the card for cash Advances from ATM machines or purchases of goods or services, or for telephone or on-line banking Advances.
>>
>> c. The HELOC loan account was assigned an account number.
>>
>> d. The terms and conditions of Lyons' HELOC loan account could only be altered in writing if signed by all parties to the loan.

JA010-011 (Compl. at ¶ 13).

"Lyons' deposit account with the Defendant was opened after PNC's acquisition of National City.  At that time, and all periods since then, Lyons did not grant PNC a security interest in his deposit account in relation to his HELOC loan account.  At no time, did PNC clearly or conspicuously even seek such a security interest in Lyons' deposit account."  JA011 (Compl. at ¶ 14).  "On September 26, 2019, PNC made an unauthorized withdrawal from Lyon's deposit account in the amount of $1,396.97 for payment on his HELOC loan account with it."  JA012 (Compl. at ¶ 17). "Lyons did not authorize or direct any of the September 26, 2019 withdrawal from his deposit account."  JA012 (Compl. at ¶ 18).  "On February 26, 2020, PNC made another unauthorized withdrawal from Lyon's deposit account in the amount of $1,589.00 for payment on his HELOC loan account with it."  JA013 (Compl. at ¶ 25).  "Lyons did not authorize or direct any of the February 26, 2020 withdrawal from his deposit account."  JA014 (Compl. at ¶ 26).

"A credit card under TILA includes a credit device and the Plaintiff's and Class members' open-end HELOC loan accounts."  JA019 (Compl. at ¶ 51).  "The Defendant claims its agreements with the Plaintiff and Class members provide it the right to take the action specifically prohibited by federal law—i.e., TILA."  JA019 (Compl. at ¶ 52).  "[PNC] unfairly and deceptively taken money from the deposit accounts of Class members in violation of the Truth in Lending Act (Regulation Z, 12 C.F.R. § 226.12 (d)."  JA020 (Compl. at ¶ 55).

PNC filed its Verified Answer (ECF. 9), under penalty of perjury, on August 31, 2020. JA025-037. In its Verified Answer, PNC refused to admit or deny that the term "credit card" under TILA includes not just the commonly referred to card but also "any…other credit device existing for the purpose of obtaining money, property, labor, or services on credit." JA025 (Answer at ¶ 2) (responding to Plaintiff's reference to 15 U.S.C.A. § 1602(l) in the Complaint (ECF. 3)). However, PNC admits "a home equity line of credit ("HELOC") can generally be described as 'open-end credit.'" JA025 (Answer at ¶ 4). Also, "PNC states the set-off payments at issue in the Complaint were authorized by Plaintiff and fully lawful" (JA026 (Answer at ¶ 5)) and Lyons is "a consumer customer of PNC" (JA026 (Answer at ¶ 10)) who "opened his HELOC with National City [who PNC is the successor in interest by merger] on or about February 4, 2005" ((JA026-028 (Answer at ¶¶ 11, 13). PNC also admits that Lyons' HELOC was not just secured by his former home and real property but was also secured by his deposit accounts with PNC. (JA027 (Answer at ¶ 12)) ("By agreeing to the terms of the Account Agreement, Plaintiff specifically authorized PNC to use set-off as a means of obtaining payments properly due and owing to PNC…In addition., Plaintiff granted PNC a security interest in his

accounts to provide collateral to PNC for loans made to Plaintiff").[3,4]  In addition, PNC admits Lyons was permitted to make withdrawals on his HELOC by credit card, check, and cash advances (JA027-028 (Answer at ¶ 13)) and the loan "remained 'open' in the sense that Plaintiff remained obligated to pay all sums due and owing on the HELOC until the loan had been paid in full." (JA028-029 (Answer at ¶ 16)).

"Because of PNC's unauthorized withdrawal from his deposit account for any payment on his HELOC loan account with it, Lyons wrote to PNC in written correspondence pursuant to 12 U.S.C.A. § 2605 and its implementing regulations and Com. Law § 13-316 to notify it of its errors ("QWR")." JA029 (Answer at ¶ 20). "In his QWR Lyons notified PNC of its errors in servicing his mortgage and that it had no right to make the unauthorized transfer on September 26, 2019 for payments related to his HELOC loan account with it.  In addition, Lyons asked PNC for information and documents it believed authorized it to do the transaction."

---

[3]    *See also* JA029 (Answer at ¶ 17) ("The Account Agreement to which Plaintiff specifically assented authorizes PNC to use set-off to obtain loan payments due and owing from Plaintiff to PNC"); JA030 (Answer at ¶ 25) (same).

[4]    It should be noted that PNC's verified statements to the district court under penalty of perjury that its Account Statements authorized the set-offs at issue is wholly untenable.  The set-off provision in every one of the various Account Agreements advanced by PNC expressly states that the set-off does not apply to "debts arising out of bank credit cards." *See* JA244, JA246, JA248 (ECF 18-1 at pgs. 19, 51, 85 of 121).  PNC included that carve-out because such set-offs are prohibited by law. *See* 15 U.S.C. § 1666h. *See also* Argument at § II.A. *infra*.

JA029 (Answer at ¶ 21). "PNC received Lyons' QWR on November 4, 2019 at the address it publishes to borrowers like Lyons for such correspondence." JA029 (Answer at ¶ 22). PNC did not timely respond to Lyons' QWR pursuant to 12 U.S.C.A. § 2605 and its implementing regulations and Com. Law § 13-316. Instead, it belatedly sent an incomplete and unfair and deceptive response to Lyons dated January 22, 2020. JA020 (Compl. at ¶ 23); JA082-084 (Exhibit 6 to Verified Answer).

In its Verified Answer and Exhibits presented to the district court, PNC admits it "received [Lyons'] Qualified Written Request (QWR) dated October 24, 2019." JA083-084 (Ex. 6 to the Verified Answer (ECF. 9-6)). As part of that correspondence, it claimed a right to collect from Lyons in the manner it did and described by this Court in *Lyons I*, 26 F.4th at 184, through a 'pre-authorized debit check.' *Id.* Yet only after it was sued by Lyons did PNC change its theory of collection by its purported secured interests in several Account Agreements with Lyons. JA026-030 (Answer at ¶¶ 5, 12-13, 17, 25).

After having lost in this Court in *Lyons I*, PNC changed course and now claimed below that Lyons' correspondence was not a qualified written request under RESPA (JA081) even though its own Verified Answer and correspondence to Lyons states otherwise. JA083-084 (Ex. 6 to the Verified Answer (ECF. 9-6)).

## SUMMARY OF ARGUMENT

This appeal concerns three core issues for the Court.

First, the merits issues presented by Lyons in this appeal concern generally whether the district court erred as matter of law in holding that neither the TILA nor RESPA provisions actually forming the basis of Lyons' claims against PNC apply to a HELOC mortgage loan. Under TILA the district court erred by holding a HELOC loan does not qualify as a "credit card plan" when it clearly qualifies as a "credit card" under the statutory text and case law. Under TILA "[t]he term 'credit card' means any card, plate, coupon book **or other credit device** existing for the purpose of obtaining money, property, labor, or services on credit." 15 U.S.C. § 1602(l)(emphasis added). This Court and others have held that a "credit card" includes any open-end credit loan with an account number—like Mr. Lyons' HELOC—and not just accounts associated with a piece of plastic. *See United States v. Bice-Bey*, 701 F.2d 1086, 1092 (4th Cir. 1983) ("The core element of a 'credit card' is the account number, not the piece of plastic"); *see also McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008) (collecting cases). The District Court's focus on the term "credit card plan" which adds "plan" to a defined term "credit card," does not alter the definition of "credit card." Lyons' HELOC meets the definition of a "credit card" under TILA.

The Court also needs to address whether or not a HELOC mortgage loan

qualifies as a "federally related mortgage loan" as that term is defined by RESPA. 12 U.S.C.A. § 2602(1). Under the District Court's opinion, anyone with a HELOC loan no longer has any rights under RESPA. The district court's opinion is inconsistent with the plain definition of the term in § 2602(1). The District Court in effect held the CFPB had the authority to exempt all HELOC mortgage loans from the scope of the substantive protections created by 12 U.S.C.A. § 2605(e) (and its related regulations at 12 C.F.R. §§ 1024.35, 1024.36) when there is no indication that Congress ever intended to permit the CFPB to wholly deny substantive protections created by 12 U.S.C.A. § 2605(e) to consumers with HELOC mortgage loans that otherwise would be so qualified.  To the contrary, Congress' specific grant of regulatory authority to the CFPB was for regulations to "carry out" § 2605's provisions, not to nullify them.

The district court essentially found that remedial protections enacted by Congress to assist (i) credit card consumers and (ii) certain mortgage loan borrowers did not apply to Lyons (or any other consumer like him).  Instead, the district court's holdings established that even though a HELOC loan involves a "credit card" under TILA, the TILA prohibitions on non-judicial seizure of a debtor's deposit funds did not apply because there are disclosure requirements elsewhere in TILA specific to HELOC mortgage loans. JA204.  The district court also went further and found that even if Lyons' HELOC loan qualified as a "federally related mortgage loan," Lyons

15

had no rights under § 2605 leaving him and all other HELOC holders with no comparable right afforded under RESPA.

Third, the Court needs to address whether PNC was permitted below to advance arguments it could have raised before and during *Lyons I*. Specifically, while PNC did indirectly raise its merits arguments to Lyons' claims concerning PNC's unlawful debt collection and servicing practices related to consumer, HELOC mortgage loans, its primary focus was on its failed arbitration theory which also violated TILA. Having elected to not fully address Lyons' TILA claims before and during the *Lyons I* arguments, on remand PNC claimed it was not barred under TILA from harvesting payments claimed due from consumers by utilizing a method of collection in violation of TILA. The issues raised in this appeal therefore could and should have been fully raised by PNC in *Lyons I*, but it waived the opportunities to do so. So, this appeal also concerns whether PNC was permitted to advance arguments below after *Lyons I* that it voluntarily chose not to assert and thereby force the litigation to proceed in a piecemeal fashion. No doubt, if the roles were reversed (i.e., a consumer was attempting proceed in a piecemeal fashion by advancing some issues in an appeal but electing not to raise others), he would be foreclosed from doing so 99% of the time. Simply put, PNC should not be entitled to special status to force a consumer to litigate his claims in a piecemeal fashion and PNC's arguments below, after *Lyons I*, should have been barred by the law of the case

doctrine and/or mandate rule based upon this Court's precedent.[5]

At bottom, the district court erred as a matter of law on the merits of the TILA and RESPA claims. The decision on both claims were based on policy conclusions that left HELOC borrowers without the protections afforded to any other credit card borrower and borrowers of a federally related mortgage loan.  Also, PNC was not entitled to raise arguments which it could have raised in *Lyons I,* but it elected not to pursue.

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews the district court's determinations of law *de novo*. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). In addition, because this action was dismissed pursuant to Fed. R. Civ. P. 12(c),[6] the Court should accept as true the totality of facts stated in and incorporated by the Complaint, verified Answer, and draw all inferences in Plaintiff-Appellant's favor. *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 405 (4th Cir. 2020); *Ray v. Roane*, 948 F.3d 222, 226

---

[5]    If the Court holds that PNC was barred from advancing arguments below that it elected to not to fully advance before and during *Lyons I* and could have done so, the Court need not address Lyons' remaining issues presented herein.

[6]    A motion for judgment on the pleadings is generally treated the same as a motion to dismiss. *Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1240 (10th Cir. 2000)("We review the denial of a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) under the same standard of review applicable to a Rule 12(b)(6) motion.")

(4th Cir. 2020).

## II. LYONS SUFFICIENTLY PLED THAT PNC'S OFF-SETS OF HIS ACCOUNTS FOR ALLEGED PAYMENTS DUE ON HIS HELOC MORTGAGE LOAN WERE BARRED BY TILA.

A. <u>TILA's Debt Collection Provisions Subject to this Action</u>

Lyons commenced this action on June 25, 2020 (JA007) challenging PNC's method of debt collection because it garnished his deposit account for a debt without any judicial permission or review. The days of creditors acting to seize property of debtors without due process or judicial supervision passed long ago. *See e.g.*, *Mitchell v. W. T. Grant Co*., 416 U.S. 600 (1974); *see also Fuentes v. Shevin*, 407 U.S. 67 (1972). Consistent with the constitutional restraints on creditors engaging in self-help enforced by the Supreme Court, TILA includes a specific prohibition on creditors engaging in self-help against debtors, 15 U.S.C.A. §1666h ("A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer…"). Regulation Z implements the straightforward statute under TILA providing in 12 CFR §1026.12(d)(1):

> A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer. *Id.*

18

Despite these barriers, there is no dispute, based on the Parties' pleadings, that PNC regularly takes consumers' property, with no court order, by helping itself to their deposit accounts even through the Account Agreements upon which it bases such right are "at all times governed by the laws and regulations of the United States of America."  JA245, JA247, JA249 (ECF. 18-1 (Pages 21, 53, 87 of 121)).

TILA and its regulations, including 15 U.S.C.A. §1666h and 12 C.F.R. § 1026.36(h)(1) are remedial consumer protections intended to protect Lyons and the putative class members he seeks to represent.  *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239, 245 (4th Cir. 2019). The regulations promulgated under it are also construed broadly.  *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994); *Patel v. Thompson*, 319 F.3d 1317, 1319 (11th Cir. 2003).  *See also* 3 Sutherland Statutory Construction § 60:1 (7th ed.)("Courts should not read into a remedial statute an exception that would impose obstacles to the achievement of its purpose;" and once a statute is determined to be remedial, "the regulations regarding exclusion are *a fortiori* remedial").

District Court Chief Judge Bredar previously summarized the law forming the basis for Lyons' TILA claim in Count I of his Complaint (JA018-020) as follows:

> Plaintiff alleges that Defendant seized funds from Plaintiffs' deposit accounts to offset their credit card debt without their authorization, in violation of TILA, 15 U.S.C. § 1666h and Regulation Z, 12 C.F.R. § 226.12(d), which read as follows:

> **15 U.S.C. § 1666h**

19

A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer unless—

**(1)** such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open end credit account by permitting the card issuer periodically to deduct all or a portion of such debt from the cardholder's deposit account ...

**12 C.F.R. § 226.12(d)**

(d) Offsets by card issuer prohibited.

(1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

(2) This paragraph does not alter or affect the right of a card issuer acting under state or federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: Obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

(3) This paragraph does not prohibit a plan, if authorized in writing by the cardholder, under which the card issuer may periodically deduct all or part of the cardholder's credit card debt from a deposit account held with the card issuer (subject to the limitations in § 226.13(d)(1)).

Plaintiffs base their right of action and request for actual damages on TILA's civil liability provision, which reads, in pertinent part:

**15 U.S.C. § 1640(a)**

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E

of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

**(1)** any actual damage sustained by such person as a result of the failure;

...

It is undisputed that Defendant used funds from Plaintiffs' deposit accounts to offset their indebtedness arising from a consumer credit transaction under a credit card plan. Further, there are no allegations that the offset was affected by attachment, levy, or court order as described in § 226.12(d)(2), or by an automatic debit plan as described in § 226.12(d)(3). The only question, then, is whether the offset was affected by "enforcing a consensual security interest in the funds" as described in § 226.12(d)(2).

*Gardner v. Montgomery Cty. Teachers Fed. Credit Union*, 864 F. Supp. 2d 410, 413–14 (D. Md. 2012).

### B. HELOCs Qualify as Credit Cards under TILA and are Not Exempt from TILA's Bar on PNC Seizing Funds of a Consumer Held in an Account

Here, the remedial provision of TILA at issue expressly limits PNC's purported right to "take any action to offset a cardholder's indebtedness arising in connection with under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer…" 15 U.S.C.A. § 1666h(a).

The material terms in the statute, "card issuer" and "cardholder," are defined terms. As stated in § 1666h(a), "the term 'card issuer' means any person who issues a credit card, or the agent of such person with respect to such card." 15 U.S.C.A. § 1602(o). In turn, "[t]he term 'cardholder' means any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising

from the issuance of a credit card to another person." 15 U.S.C.A. § 1602(n). Finally, TILA defines the term "credit card."[7] PNC meets the definition of "card issuer" (JA008-010, JA019 (Compl. at ¶¶ 2-4, 11, 15, 50-51), JA025, JA027, JA033 (Answer at ¶¶ 2-4, 11, 50)) and Lyons meets the definition of "cardholder" under TILA (JA008-010, JA019 (Compl. at ¶¶ 2-4, 12, 50-51), JA025, JA027, JA033 (Answer at ¶¶ 2-4, 12, 50)). *See also* FN 4 *supra*.

The district court recognized the broad definition of the term "credit card" under TILA at 15 U.S.C.A. § 1602(l).  JA203.  However, it ignored that actual definition by holding a HELOC mortgage loan was not qualified as a "credit card plan" in 15 U.S.C.A. § 1666h(a).  JA204.  The District Court's focus on the term "credit card plan" served as a basis to distance it from the term "credit card" that is a defined term and applies to Lyons' HELOC loan transaction. The addition of the word "plan" does not change that.  But the District Court relied on its construction of "credit card plan" to carve out an exception to applying the protections afforded to borrowers when their transaction involved a "credit card" under the TILA and Regulation Z.  This Court explained earlier this year:

---

[7]      In its initial motion below after remand, PNC ignored the broad definition of "credit card" in § 1602(l) all together.  JA122-130.  Instead, it invited the district court to ignore the statutory text it does not like and focused only on portions of the text it does embrace which are not even the focus of Plaintiff's actual TILA claims. Quite simply, PNC's argument lacked candor and the broad definition of "credit card" forecloses its TILA arguments.

> As the Supreme Court has indicated, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)). And "including" is "not [a term] of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941); *see also United States v. Hawley*, 919 F.3d 252, 256 (4th Cir. 2019) (explaining that including "is an introductory term for an *incomplete* list of examples"); *Include, Black's Law Dictionary* (10th ed. 2014) ("The participle *including* typically indicates a partial list.").

*Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022).

In TILA, the term 'credit card' is a defined term and "means **any**…**credit device** existing for the purpose of obtaining money, property, labor, or services on credit." 15 U.S.C.A. § 1602(l) (emphasis added). The use of "any" in § 1602(l) means the term should be read expansively and not narrowly. *Alexander,* 23 F.4th at 376. And in this case multiple courts, including this Court, have so read the term to include HELOCS as a "credit card" transaction under TILA. *See Bice-Bey*, 701 F.2d at 1092 ("The core element of a 'credit card' is the account number, not the piece of plastic."); *see also McAnaney*, 2008 WL 222524, at *4 (collecting cases recognizing a HELOC is open end credit like a traditional plastic, credit card). Further, the court in *Munoz v. Seventh Ave., Inc.,* No. 04 C 2219, 2004 WL 1593906 (N.D. Ill. July 15, 2004) held that a narrow view of credit card advanced here by

PNC and adopted by the district court below was inconsistent with the remedial nature of TILA and explained:

> Section 1602(k) contains a broad definition of "credit card" which encompasses items that are not within the common understanding of the term credit card, such as a "coupon book" or "other credit device." The form with an account number that was printed on the previously reproduced page of the Seventh Avenue catalog was a device that could be used to purchase property on credit. It is in the shape of a card, but apparently was not perforated or otherwise readily separated from the entire page of the catalog. But even if it was not "any card" as that term is used in § 1602(k), the form and account number provided certainly would qualify as a credit device as that term is used in § 1602(k).

*Id.* at *2-4. *See also Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1002 (N.D. Ill. 2009)(recognizing "broad" definition of § 1602(l) but declining to rule whether the Plaintiff's HELOC was a "credit card" under TILA since no party made the argument). *Compare Alexander*, 23 F.4th at 376 ("All told, 'any amount' means what it says—*any* amount, whether or not that amount is incidental to the principal obligation").

In TILA, the term 'credit card plan' used in 15 U.S.C.A. § 1666h(a) is not defined. However, applying the dictionary definition of "plan" which is simply "a method for achieving an end," according to Merriam-Webster Dictionary (https://www.merriam-webster.com/dictionary/plan), to change or limit the defined term of "credit card" is not warranted. It simply describes general terms of the agreement governing the credit card and nothing more. "'When a statute includes an explicit definition, [a court] must follow that definition,' even if it varies from a

term's ordinary meaning. *Burgess v. United States,* 553 U.S. 124, 130 (2008)."
*Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776–77 (2018)(cleaned up). *See also* § 47:7. Definition provisions, 2A Sutherland Statutory Construction § 47:7 (7th ed.)("A statute itself furnishes the best evidence of its own meaning, and if an act's intent can be ascertained clearly from its own provisions, that intent prevails and courts do not resort to other aids for construction").

Here, the district court recognized the statutorily defined term 'credit card' (JA203) but limited it by holding that the addition of the word 'plan' somehow was intended to remove HELOC mortgage loans from the scope of 15 U.S.C.A. § 1666h(a) and Regulation Z to permit PNC to seize Lyons' funds held in his accounts without any due process.  JA203-204.  This construction by the district court simply substituted a result-oriented policy judgment for the actual policy choice and definition enacted by Congress and should be reversed.   Simply put, it was error for the district court to simply ignore the actual, expansive defined term of 'credit card' in TILA by reconsidering its meaning by the addition of the word "plan".

The crux of PNC's argument below, was that it now claims that even when a credit card and account number (JA008-011 (Compl. at ¶¶ 2-4, 13), JA025, JA027-028 (Answer at ¶¶ 2-4, 13)) are issued in conjunction with a HELOC loan, the open-ended loan is treated differently than other similar open-ended loan transactions that involve plastic credit cards and account numbers because the security offered to

secure a HELOC includes consumer, residential real property. JA122-126 (Motion at 6-10). PNC's argument is misplaced.[8]

"The TILA prohibition on offsets is presented as an absolute bar preventing a card issuer from taking action to offset credit card debt against funds held on deposit with the card issuer. 15 U.S.C. § 1666h(a). The sole exception to the no-offset rule is when a cardholder agrees in writing to periodic deductions, *Id.* at § 1666h(a)(1)." *Martino v. Am. Airlines Fed. Credit Union*, 121 F. Supp. 3d 277, 283 (D. Mass. 2015). If Congress had intended to exempt HELOCs from the scope of 15 U.S.C. § 1666h(a) it would have done so expressly along with the other exemptions. *Id.* Since it chose not to do so, the district court had no authority to add to the list of exceptions Congress did not enact itself. *See* FN 8.

---

[8]     PNC seeks to establish a judicial exemption to escape TILA liability to Lyons and the putative class members. The Supreme Court has explained in *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980):

> Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.

*Id. See also Hillman v. Maretta*, 569 U.S. 483, 496 (2013); *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 431–32 (4th Cir. 2018), cert. denied sub nom. *Waples Mobile Home Park Ltd. P'ship v. de Reyes*, 139 S. Ct. 2026, 204 L. Ed. 2d 218 (2019); *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 527 (D. Md. 2006); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 539 (E.D. Va. 2003), aff'd, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004).

If anything, there are few compelling reasons to grant a creditor secured by a consumer's home an unfettered right to seize other property of a consumer. PNC's belief that the addition of a consumer's home as security for loan means that the loan can never be considered to involve a credit card plan is unfounded and should be rejected. Nowhere in the statutory provisions at issue (i.e., 15 U.S.C. § 1601 *et seq.*) did Congress exempt HELOCs from the term "credit card" and nowhere in the regulations did any authorized agency do the same.

> Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people.

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). *See also Consolidation Coal Co. v. Williams*, 453 F.3d 609, 618 (4th Cir. 2006)(recognizing that "'[c]ourts should liberally construe remedial legislation…so as to include the largest number of claimants within its entitlement provisions'")(quoting *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 318 (3d Cir. 1995)).

PNC does not dispute that its HELOC involves a credit card. Since it involves a credit card and an account number (JA008-011 (Compl. at ¶¶ 2-4, 13), JA025, JA027-028 (Answer at ¶¶ 2-4, 13)), it also involves a credit card plan notwithstanding that a consumer also gives a security interest in their home in conjunction with the loan. That HELOC loan transaction is subject to the provisions

27

of 15 U.S.C.A. §1666(h) or 12 CFR § 1026.12(d)(1). The express protections for consumers cannot be evaded because a different provision that requires additional disclosures for HELOC loans. To do so would contravene the goals and purpose of TILA.

Based upon the foregoing argument, the holdings of the district court that Lyons cannot pursue his claims under 15 U.S.C.A. §1666(h) or 12 CFR § 1026.12(d)(1) related to PNC's practice of policy to seize funds without the right to do so based upon Lyons' credit card should be reversed.

## III. PLAINTIFF-APPELLANT SUFFICIENTLY PLED HIS CLAIMS UNDER RESPA; A HELOC QUALIFIES AS A FEDERALLY RELATED MORTGAGE LOAN.

Even though PNC treated Lyons' correspondence as subject to RESPA as demonstrated by its Verified Answer (JA082-083 Exhibit 6 to Verified Answer),[9] the district court recognized a spilt of authorities from across the country (JA205-206) and held that the CFPB was permitted to exempt RESPA's

---

[9]    In an exhibit to its own pleading before the district court, PNC admitted: "On November 4, 2019, PNC received your Qualified Written Request (QWR) dated October 24, 2019, regarding the above referenced loan."  JA083 (ECF. 9-6 at Page 2 of 3 (and identifying loan ending in 11507)).  In other words, having accepted Lyons' correspondence as subject to RESPA previously and thereafter voluntarily presenting it to the Court as part of its Verified Answer (JA082-084), PNC changed course after losing in this Court and claimed that the correspondence is somehow not subject to RESPA.  JA130-131 (Motion at 14-15).

requirements from applying to an otherwise qualified 'federally related mortgage loan' in the form of a HELOC.  JA205-206.

RESPA gives rights to borrowers who have put their homes at risk for loans. The actual RESPA right at issue in this case requires "[i]n relevant part...that loan servicers have a duty to respond to any QWR received from borrowers "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e)(2).  Under RESPA,

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B).  *See also* § 2605(e)(1)(A) (applying RESPA's QWR requirements to a "servicer of a federally related mortgage loan").

Congress also specifically defined the term 'federally related mortgage loan' to mean:

> **any loan** (other than temporary financing such as a construction loan)
>
> which--
>
> (A)is **secured by a first or subordinate lien on residential real property** (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property….

12 U.S.C.A. § 2602(1)(A)(emphasis added).

Once again, following this Court's recent statutory construction analysis, the use of "any" in 12 U.S.C.A. § 2602(1)(A) demonstrates an expansive view and scope of the statute's application to mortgage loans which should include Lyons' former HELOC loan on the face statute of the facts before the district court. *Alexander, LLC*, 23 F.4th at 376. *See also* JA008-012 (*see e.g.*, Compl. at ¶¶ 4, 10, 12-13, 15-16) and JA027-028, JA031, JA074-079 (Answer at ¶¶ 13, 37 and Ex. 4 thereto).

Rather than focus on the statutory terms contained in RESPA, PNC's arguments below focused upon the scope of the CFPB's regulations which do not apply to the statute but to RESPA's Regulation X provisions. JA130 (Motion at 14). While the CFPB chose to narrow the scope of the Regulation X provisions to exclude HELOC loans within the regulations themselves, nowhere in Regulation X did the CFPB seek to limit the actual scope of 12 U.S.C.A. § 2605's application to Lyons' HELOC loan which qualifies on its face as a federally related mortgage loan pursuant to 12 U.S.C.A. § 2602(1)(A). Nor could the CFPB amend the statutory language enacted by Congress even if it wished to do so without creating a separation of powers issue.

The conflict between the statutory text of RESPA and its regulations embraced by PNC and the district court below has been recognized by other courts.

In asserting that RESPA does not apply to Plaintiff's debt, Defendants rely upon RESPA's implementing regulations, which provide that the qualified written request provision "does not include subordinate lien loans." 24 C.F.R. § 3500.21(a), (e). As other courts have acknowledged, this regulatory definition "directly conflicts with the language in RESPA" that includes subordinated liens in its borrower inquiry provisions. *Cortez v. Keystone Bank, Inc.,* 2000 WL 536666, at *11 (E.D.Pa. May 2, 2000); *see also MorEquity, Inc. v. Naeem,* 118 F.Supp.2d 885, 901 n. 7 (N.D.Ill.2000) (noting in *dicta* that the regulation conflicts with RESPA). Defendant does not suggest that these provisions can be reconciled and the court finds that they are incompatible. Therefore, the court follows RESPA's more inclusive statutory language, because an administrative agency's regulation is ineffective to the extent it conflicts with its parent statute. *See United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) ("For regulations, in order to be valid must be consistent with the statute under which they are promulgated."). Accordingly, RESPA applies to Plaintiff's loan.

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 408 (E.D.N.Y. 2012), aff'd, 529 F. App'x 45 (2d Cir. 2013). *See also Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *11 (E.D. Pa. May 2, 2000)(recognizing the conflict between the statute and regulations in relation to a line of credit and holding "the language in the borrower inquiry provision of RESPA clearly and unconditionally states that the provision applies to any 'federally related mortgage loan' which RESPA unambiguously defines" and includes HELOCs).

At least one other court has rejected PNC's argument advanced in this action. In *Polonowski v. PNC Bank, N.A.*, No. 1:20-CV-151, 2021 WL 4476996 (W.D. Mich. Sept. 30, 2021), the magistrate's recommendation "conclude[d] Regulation X precludes Plaintiffs from prevailing on the merits of the claim because the loan is a

home equity line of credit." *Id.* at *3. The borrower, like Lyons here, objected to the recommendation "arguing that when a regulation conflicts with the statute under which the regulation was promulgated, the regulation fails." *Id.* The district court judge in *Polonowski* thereafter rejected the magistrate's recommendation explaining:

> The authority supporting Defendant's position merely identifies the language in Regulation X, without considering the broader language in the statute. The authority supporting Plaintiffs' position considers both and concludes that the regulation cannot narrow the scope of the statute. In this Court's opinion, the courts supporting Plaintiffs' position offer a more complete and persuasive discussion of the legal question.

*Id.*

Finally, within this Circuit one other court appears to have also considered and rejected the arguments advanced by PNC and adopted by the district court here. That court explained:

> Moreover, in 2019, well after the current version of Regulation X was published, the Third Circuit Court of Appeals applied a RESPA analysis to a dispute regarding a home equity loan. *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 464 (3d Cir. 2019).
>
> Although this issue has not yet come before the Fourth Circuit, the court is persuaded by the reasoning of *Hawkins-El* and *Cortez*. Congress's definition of a federally regulated mortgage loan under RESPA includes home equity loans and thus provides such borrowers access to the inquiry provisions under RESPA. Regulation X conflicts with this definition by excluding home equity loan borrowers from the protections of the RESPA. Therefore, the court will rely on the language of the statute and find that the Herrmanns claim regarding their home equity is proper under RESPA.

32

*Herrmann v. Wells Fargo Bank, N.A.*, 529 F. Supp. 3d 549, 559 (W.D. Va. 2021).

The district court's adoption of PNC's effort to limit the scope of RESPA beyond the plain text of the statute should be rejected. Once again, PNC is not entitled to judicial exemption to the actual scope of the remedial statute. *Hillman,* 569 U.S. at 496; *Reyes,* 903 F.3d at 431–32; *Russell,* 430 F. Supp. 2d at 527; *Noah,* 261 F. Supp. 2d at 539. Further, the majority rule that has emerged in the case agrees with Lyons that the plain language of RESPA (i.e., 12 U.S.C.A. § 2602(1)(A), § 2605(e)) applies to 'any federally related loan' including a HELOC loan.

Based upon the foregoing, the district court's ruling below dismissing Lyons' RESPA claims under 12 U.S.C.A. § 2605(e) should be reversed. It was legally erroneous. RESPA was intended as remedial legislation and the district court's narrow view of the statute defeats the purpose. *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016). *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 717 (8th Cir. 2018), reh'g denied (May 29, 2018).[10]

---

[10]     *See also Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665–66 (9th Cir. 2012)("Congress intended RESPA to serve consumer-protection purposes….the scope of the statute's provisions was expanded in 1990 to encompass loan servicing, Pub. L. No. 101–625, tit. IX, subtit. C, § 941, 104 Stat. 4405 (1990). Accordingly, RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose"); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016)("The RESPA section at issue, 12 U.S.C. § 2605, imposes a duty on loan servicers to respond to borrower inquiries").

## IV. THE CFPB WAS NOT GRANTED AUTHORITY BY CONGRESS TO ISSUE WHOLESALE UNREASONABLE EXEMPTIONS FROM RESPA'S SCOPE RELATED TO HELOC LOANS OTHERWISE ENTITLED TO PROTECTIONS AND RIGHTS AT ISSUE IN THIS CASE

As part of its rationale for dismissing Lyons' RESPA claims was the District Court's conclusion that the CFPB was delegated the authority to exempt "classes of transactions" pursuant to 12 U.S.C.A. § 2617(a)—including HELOC mortgage loans from the scope of 12 U.S.C.A. § 2605.  JA204.

The district court did not, however, consider that the actual scope of § 2617(a)'s exemption authority.  As argued *supra*, this authority is limited and narrow, and does not apply to the statutory rights granted by Congress but is limited to the CFPB's regulations which may need

(i)      "reasonable exemptions" which are

(ii)     necessary by "rules and regulations" or "interpretations"

(iii)    "to achieve the purposes of [RESPA]"

12 U.S.C.A. § 2617.

In addition, the more specific delegation of regulatory authority granted by Congress to the CFPB concerning mortgage servicing, which is what is at issue for Lyons' claims before the Court, limited CFPB's regulatory authority to "any requirements necessary to carry out this section."  12 U.S.C.A. § 2605(j)(3).[11]  So,

---

[11]      It should be noted also that Congress amended § 2605(j)(3)(to apply to the CFPB)  and added § 2605(k)(1)(A)(requiring "A servicer of a federally related

the CFPB was not permitted by regulation to eliminate Lyons' rights and protections under 12 U.S.C.A. § 2605, which is what the district court erroneously held.  JA204-206.  This specific limitation on the CFPB's regulatory authority set forth in 12 U.S.C.A. § 2605(j)(3) controls over any general authority granted under 12 U.S.C.A. § 2617(a). Any CFPB regulations that conflict with the plain text of §2605 of RESPA is not entitled to any deference since Congress expressly limited the CFPB's regulation authority "to carry out RESPA" and not to narrow it beyond that which Congress actually enacted.  12 U.S.C.A. § 2605(j)(3).

This Court has also explained when interpreting an agency regulation:

If we conclude that Congress has delegated authority to the agency to make rules carrying the force of law, then we proceed to the traditional two-step *Chevron* analysis. "[I]f the intent of Congress is clear [with respect to the matter that the agency has interpreted], that is the end of the matter; for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. We will overturn unreasonable agency decisions because we presume that Congress does not authorize unreasonable statutory constructions. At bottom, however, a court "may not substitute its own construction of a statutory provision for a

---

mortgage loan…[to] take timely action to respond to a borrower's requests to correct errs…") as part of the Dodd-Frank Act. DODD–FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, PL 111-203, July 21, 2010, 124 Stat 1376 at §§ 463, 1098.  If Congress had intended to authorize the CFPB to wholesale adopt prior HUD regulations to trump § 2605(e) it would have expressly said so and instead said the opposite by enacting the mandatory provisions at § 2605(k) which apply to all 'federally related mortgages.'  12 U.S.C.A. § 2605(k)(1).

reasonable interpretation made by the administrator of the agency." *Id.* at 844, 104 S.Ct. 2778.

*A.T. Massey Coal Co. v. Holland*, 472 F.3d 148, 167 (4th Cir. 2006).

There is no reasonable basis or permissible construction before the Court from the plain language of the statute or in RESPA's regulations to conclude Congress ever meant for the CFPB to take away the rights of mortgage borrowers with federally related mortgages to challenge the methods of collection by mortgage servicers like PNC which are not authorized by the signed mortgage agreement (JA74-79). RESPA provides that loan servicers have a duty to respond to any QWR received from borrowers "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e)." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 648 (4th Cir. 2022). In turn, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan…" 12 U.S.C.A. § 2605(i)(3). The scope of § 2605(e)'s plain language is not simply limited to billing disputes or errors on periodic statements, but is broader to include methods of collection of payments from a borrower like those disputed by Lyons in this action (JA80-81). *Id.*

The District Court's interpretation that elevated the CFPB's regulations over the plain language of 12 U.S.C. § 2605(e)(i) and the defined term of 'federally related mortgage' was in error since the CFPB's regulatory authority was expressly limited for the purpose of carrying out "any requirements" of RESPA. 12 U.S.C.A.

§ 2605(j)(3).  Congress cannot have intended to substitute the general provision of § 2617 to override the specific provisions of § 2605(j)(3) since they were both last amended at the same time under the Dodd-Frank Act.  *Compare Beuster v. Equifax Info. Servs.,* 435 F. Supp. 2d 471, 476 (D. Md. 2006)(recognizing that when Congress amends two provisions at the same time it "d[oes]  not intend one section to serve as a substitute for the other").

Finally, the CFPB's election to not apply Regulation X's protections to mortgage borrowers within its regulatory authority cannot diminish the rights and protections enacted by Congress in the statute itself.   The district court's opinion misstated the actual intent of the CFPB in its mortgage servicing rule as demonstrated as follows:

**Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01**

| The District Court's Opinion: | But the Actual Announcement in the Federal Register stated: |
|---|---|
| "The CFPB has explained that it believed it was 'necessary and appropriate at this time not to apply [RESPA's] requirements' to open-end credit like HELOCs, because…" | "The Bureau believes it is necessary and appropriate at this time not to apply the requirements in **subpart C** to open-end credit (home equity lines)." |
| JA205. | Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01, 10721 (emphasis added) |

37

The district court's substitution of "RESPA" in place of "subpart C" erroneously expanded what the CFPB actually was doing in its mortgage servicing regulations in Regulation X. The CFPB was not excluding HELOC mortgage loans from the scope of 12 U.S.C.A. § 2605 (which is something only Congress could do). At best, the CFPB was simply stating it did not believe its regulations needed to be applied to HELOC mortgage loans due to differences it perceived at the time between HELOCs and close-end mortgage loans. 78 FR 10696-01, 10721-22.[12]

Based on the foregoing Plaintiff-Appellants' stated claims under RESPA should be permitted to proceed and district court's decision should be reversed.

## V. PNC AND THE DISTRICT COURT WERE BARRED FROM ADVANCING AND CONSIDERING ISSUES UPON REMAND WHICH WERE RAISED OR COULD HAVE BEEN RAISED IN *LYONS I*

---

[12] It should be noted that the "separate error resolution and information request requirements exist under Regulation Z" cited to by the CFPB in 78 FR 10696-01, 10721-22 cannot serve as substitution for Lyons' broader rights under 12 U.S.C.A. § 2605(e) for two reasons. First, the exemption authority granted to the CFPB under 12 U.S.C.A. § 2617(a) was limited to reasonable exemptions related to the purposes of RESPA which do not include other provisions that may or may not apply from TILA or another statute. Second, Regulation Z's billing dispute provisions do not concern errors and disputes related to improper methods of collection by mortgage servicers like those subject to Lyons' QWR (JA081-082) and are limited to billing disputes on periodic statements and do not address the seizure of funds from your savings account for alleged sums claimed due. 12 C.F.R. § 1026.13.

After seeking and obtaining an extension of time to respond to Lyons' complaint, PNC waived its right to move to dismiss pursuant to Rule 12(b)(6) motion and filed its Verified Answer. JA025-084. Then, PNC moved to compel some of Lyon's TILA claims to arbitration and to stay all further proceedings as to Lyons' RESPA claims pending its claim to arbitration. JA212-225. According to *Lyons I*, PNC's effort to arbitrate Lyons' claim was barred under TILA. PNC also argued against the merits of Lyons' claims against it even while its primary effort concerned its improper claimed right to arbitrate Lyons' TILA (but not his RESPA) claims. JA228-232.

In the *Lyons I* appeal, PNC voluntarily argued to this Court the crux of its merits argument:

> The merits of Plaintiff's TILA claim are not at issue in this appeal, but PNC respectfully states that Plaintiff's theory of TILA liability finds no support in applicable law. Plaintiff relies on 15 U.S.C. § 1666h, which restricts the use of set-off by "card issuers" against debts incurred by a "cardholder" under a "credit card plan." Because the HELOC is not a "credit card plan," this section of TILA does not apply.

Brief of Cross Appellee-Defendant at 3, *Lyons v. PNC Bank, N.A.*, 26 F.4th 180 (4th Cir. 2022) (No. 21-1058, Doc. 15), 2021 WL 1418023. *See also* Reply Brief of Cross Appellee-Defendant at 8, 13-15, Lyons v. PNC Bank, N.A., 26 F.4th 180 (4th Cir. 2022) (No. 21-1058, Doc. 30) (arguing "[T]he Account Agreement grants PNC the right to use set-off against his deposit account if he fails to make payments due

to the bank….When PNC applied the pertinent set-offs in 2019 and 2020, it did so

pursuant to the Account Agreement….The Court should nevertheless note that Mr.

Lyons' theory of liability would render the set-off provisions of the Account

Agreement inapplicable…The Account Agreement authorized the set-offs in

question…");      PNC's      Oral      Argument      (available      at

https://www.ca4.uscourts.gov/OAarchive/mp3/21-1058-20211028.mp3) at 37:20 –

39:10 (arguing requirements of mortgage loan origination did not put PNC on notice

of Lyons' collection practices barred elsewhere under TILA and if Congress

intended to do so it would have said so "much more explicitly").

In this Circuit, a party who had the opportunity to argue issues before this

Court but fails to fully embrace that opportunity is not permitted to raise those issues

on remand. The issues are held to be voluntarily abandoned by the Party.  *United

States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).  Put another way,

> On appeal, a party waives "any issue that could have been but was not
> raised" before the appellate court. *Doe v. Chao,* 511 F.3d 461, 465 (4th
> Cir.2007). Because it has not been tendered to the appellate court for
> decision, an issue that has been waived on an initial appeal is "not
> remanded" to the district court even if other issues in the case are
> returned to the court below. *Id.* Given that a waived argument is not
> within the scope of the appellate mandate, the mandate rule thus holds
> that, "where an argument could have been raised on an initial appeal, it
> is inappropriate to consider that argument on a second appeal following
> remand." *Omni Outdoor Adver. v. Columbia Outdoor Adver.,* 974 F.2d
> 502, 505 (4th Cir.1992) (internal quotation marks omitted).

*United States v. Boadu*, 637 F. App'x 740, 742 (4th Cir. 2016).

> The mandate rule is a "more powerful version" of the law of the case doctrine. *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005). It requires a lower court to faithfully apply the mandate of a higher court, which is controlling as to all matters within its scope. *Doe v. Chao*, 511 F.3d 461, 464–65 (4th Cir. 2007). The rule has two dimensions: "First, 'any issue conclusively decided by this court on the first appeal is not remanded,' and second, 'any issue that could have been but was not raised on appeal is waived and thus not remanded.'" *Id.* (quoting *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002)).

*JTH Tax, Inc. v. Aime*, 984 F.3d 284, 291 (4th Cir. 2021).[13]

The mandate rule also is consistent with Fed. R. Civ. P. 1 which establishes that this action should be afforded a "just, speedy, and inexpensive determination of every action and proceeding." Permitting parties like PNC to raise issues abandoned and forfeited should not be sanctioned—especially when those parties lost every argument on appeal and chose to file their Verified Answer before seeking to compel this matter to arbitration.

The district court erred by disregarding this Court's precedents and persuasive authorities (i.e., *Aramony*, 166 F.3d at 661; *Aime*, 984 F.3d at 291; *Boadu*, 637 F. App'x at 742) and concluding that PNC was permitted on remand to raise issues which it had already raised and certainly could have more fully raised in its initial briefing before and during the *Lyons I* appeal. JA201-203. While it is true PNC's

---

[13]    Although Lyons raised the mandate rule distinction from the law of the case doctrine, as part of his arguments below.

effort 'focused' on its improper right to force some of Lyons' claims to arbitration in violation of TILA, the law of case doctrine and mandate rules apply to issues raised by parties and issues which could have been raised by parties before and during the first appeal. *Aramony*, 166 F.3d at 661; *Aime*, 984 F.3d at 291; *Boadu*, 637 F. App'x at 742.

Here, PNC did actually make the voluntary election to half-heartedly raise its merits issues before and during the first appeal in *Lyons I*. JA228-232 (Reply in Support of Motion to Compel at 3-7). So, the district court's conclusion that PNC's arguments were 'exclusively focused' on arbitration simply disregards the actual proceedings and arguments actually advanced by PNC. JA202-203. Conversely, PNC did not elect to move initially just on failed arbitration theory before (i) filing its Verified Answer and (ii) seeking to pursue arbitration while also addressing the merits of Lyons' claims. Had it simply proceeded on its arbitration arguments alone, Lyons could not advance this argument now, but he does do so here because the appearance of unfairness exists when PNC's voluntary elections are overlooked to avoid the application of the fundamental law of the case doctrine and mandate rule which are designed to avoid piecemeal litigation like that preferred by PNC and the district court's ruling.

The district court's ruling below also suggested that PNC risked waiving its claimed right to arbitration by also moving to dismiss the merits of Lyons claims,

citing to *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 141 (4th Cir. 2018). JA202. This conclusion is simply erroneous when compared to the actual record of this case, common practice, and the distinguishing facts in *Degidio*. Here, PNC raised in its arbitration and related papers its basic arguments as to the merits of Lyons' claims first before the district court and then before this Court in *Lyons I*. Also, in *Degidio* the defendant litigated the merits of the plaintiffs' claims for three years and "used arbitration as an insurance policy in an attempt to give itself a second opportunity to evade liability" to improperly seek "two bites at the apple" to evade judicial review. *Id.* at 141-142.

Without addressing Lyons' arguments under the mandate rule, the district court below also found that Rule 12(c) was an exception to the law of the case doctrine. JA201-203. However, this Court has never so held and if true, would reverse substantial case law suggesting otherwise.[14] Here, PNC voluntarily elected to advance half-hearted merits arguments to the district court and this Court as to the merits of its theory while advancing its arbitration theory. JA228-232 (Reply in Support of Motion to Compel at 3-7). It could have elected to simply address its arbitration theory or address both its arbitration theory and merits argument in full.

---

[14]    *See e.g. Aramony*, 166 F.3d at 661; *Aime*, 984 F.3d at 291; *Boadu*, 637 F. App'x at 742 (all holding the law of the case doctrine applies to issues raised and issues which could have been raised).

But it waived such rights by strategically seeking the preferable second and third bites at the apple.

> Waiver, we have said, "is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted). To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other.

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

In the circumstances presented PNC was based by its intentional waiver of its rights to address the full merits of Lyons' claims by its conduct before and during the *Lyons I* appeal. The district court was therefore barred from considering such arguments on remand and its decision below should be reversed. Certainly if the roles were reversed—a consumer in an action when a bank sued him was relitigating issues he half-hardily raised in his first appeal upon remand after losing in this Court—he would be foreclosed from doing so under this Court's precedent. PNC is not entitled to special treatment after waiving its full rights before and during the *Lyons I* appeal.

## CONCLUSION

For the above reasons, the district court's order should be REVERSED with instructions to the District Court to DENY PNC's motion for judgment on the pleadings on the Complaint and permit this matter to proceed in the normal course.

Respectfully submitted,

*/s/ Phillip R. Robinson*
Phillip R. Robinson
**CONSUMER LAW CENTER, LLC**
10125 Colesville Rd., Suite 378
Silver Spring, MD 20901
(301) 448-1304
phillip@marylandconsumer.com

*/s/ Scott C. Borison*
SCOTT C. BORISON
**BORISON FIRM LLC**
1400 S. Charles St.
Baltimore MD 21230
 (301) 620-1016
scott@borisonfirm.com

*Counsel for the Appellant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 32(f), the brief contains 11,564 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2018 in 14 point Times Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Respectfully submitted,

*/s/ Phillip R. Robinson*

Phillip R. Robinson

## CERTIFICATE OF SERVICE

I hereby certify than on November 23, 2022, I cause the foregoing document to be filed through the CM/ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Respectfully submitted,

*/s/ Phillip R. Robinson*

Phillip R. Robinson